v. Belmontes, we'll hear first from Ms. Shepard. May it please the court, Katie Shepard for Mr. Belmontes. There are two contested issues in this case. The first is whether the district court relied on an improper factor, and the second is whether the alcohol conditions are unnecessary. For the first issue, the law in this circuit is well-established. Under Miller and Rivera, a district court at a revocation hearing can't rely primarily on the retribution factors in 3553A2A. Those factors are seriousness, respect for the law, and just punishment. The Miller rule is important because it avoids serious constitutional problems under the Double Jeopardy Clause and the Sixth Amendment right to a jury trial. I've never really understood our law in this area. So as you stated, for certain sentences for people whose supervision has been revoked, we can't consider the seriousness of the offense, but we can consider, or a judge can consider, the nature and circumstances of the offense. I mean, what's the difference? I think this court's opinion in Sanchez illustrates that difference. In that case, the court was considering the nature of the offense where the defendant had been called by someone or through third party had heard that someone wanted to fight him, and instead of de-escalating the situation, the defendant said, come over, let's get this over with, and armed himself with a knife. And in that case, the district court focused on those circumstances and emphasized the fact that the defendant was on the court supervision. And there's an example where, because of those facts of the underlying crime are relevant to the nature of the offense and relevant to the breach of the district court's trust, that's where a court was on the correct side of that line between nature of the offense and seriousness. But here, we don't have facts like that. Instead, the court repeatedly emphasized the seriousness of the offense, of the new law violation, and in this case, also, Mr. Balmontes had forgotten that he was on federal supervisory lease. He told the court that... No objection was filed in the district court on this front. I'm sorry, could you repeat that? No objection was filed in the district court on this front, is that correct? That's correct. So you're subject to plain error. Correct. Tell us how you can climb that very steep wall of the plain error doctrine. Well, this court said in Rivera, as far as the second prong, that there's no reasonable dispute that a district court at a revocation hearing can't rely on the retribution factors. And Rivera and this court's en banc decision in Escalante-Reyes are helpful on the third prong, explaining that if seriousness was the primary reason or essential reason or loomed large at the hearing, then that is in effect on substantial rights. And finally, on the fourth prong, under Escalante-Reyes, the court emphasized repeatedly the seriousness of the offense. And the Supreme Court has also said on the fourth prong, as far as Rosales-Morales, that because the cost of a resentencing is relatively low, that's a factor for this court to consider on the fourth prong. And here, it would just be a resentencing, since it wasn't a trial error. The government has argued... is a big hurdle for you, because here the judge, he just said, I generally consider the 3553 factors. He didn't specify which ones. So if it's just, if we conclude it's just uncertain which factors, of those factors he was relying on, doesn't that mean there was no obvious error? Well, I think it is obvious in this case that the court was relying on seriousness. Although the court did not literally say the word seriousness, the best example, I think, in the record of the court's focus on seriousness was that the court made an estimate of the offense level under the guidelines. So that's not an example of where the court is considering the nature of the offense, like in Sanchez. The court is considering the seriousness of the offense. And the court kept coming back to that throughout the hearing, focusing on how it was a lot of drugs. The court called it a big chunk of cocaine a couple of times, and talked about how long the sentences are out of Harris County. The court said that he sees cases like this get 10 years, some really big sentences on cases like that. All of that goes to the seriousness of the offense, the type of long sentence he's going to get out of Harris County, not the nature of the offense and the focus on the district court's, the breach of the district court's trust. And again, Mr. Belmonte forgot that he was on federal supervisory lease. He told the court that at the hearing. He told his probation officer that when she first made contact with him. And it's not all surprising that he forgot, considering the timeline of his state and federal sentences. He was released from custody in July 2018, but he was released from state custody, not federal custody. It had been about two years since his federal sentence, his federal prison sentence had expired in about May of 2016. And his federal sentence was concurrent to the state sentence and shorter than the state sentence. And throughout the original federal proceedings, he was in primary state custody. Also, the record shows that once probation made contact with Mr. Belmonte, he reported and followed all directives. He hadn't had any additional problems on supervised release. The probation officer at the revocation hearing even said that she wasn't sure he needed the curfew condition anymore because he had been following and reporting, following her directives and reporting. And he'd also been cooperating with his Harris County probation officer. So all of that context, in addition to the district court's comments, shows that the court here wasn't focused on the breach of the trust of the supervised release conditions, but rather the improper factor of seriousness. For the first time on appeal, the government has argued that this was a mandatory revocation under G, and so Miller doesn't apply. But no one in the district court thought that's what was happening in this case. The district court found the new law violations at the record on page 104. Five pages later, counsel for Mr. Belmonte asked the court to continue him on supervision, and the district court said it would consider that, although it wasn't inclined to do that. At that point, the court turned to the prosecutor, who did not say, Your Honor, you have to revoke him. We're proceeding under G. The prosecutor said that she didn't have anything to say. And although there was a worksheet in this case that mentioned G, that doesn't give notice because it's a preprinted form, and every case has that exact same information on it. And I would also mention that on the record at page 183, the worksheet lists sentencing options for the court and doesn't actually list G. It just says it's a mandatory revocation for grade A violations under the guidelines, which, of course, are actually advisory since their policy statement. But regardless of what everyone thought of the revision, because there was this drug violation, I mean, what's the point of a remand? We would know what's going to happen. Well, I think the government had its chance to proceed under G in the district court and didn't do that. So a remand would be for resentencing under, without the improper factors. And you don't think on remand the court could say, Oh, no, this is a mandatory revocation, and I'm going to do the same thing I did last time. I think the court could do the same thing as last time with this discretion and considering proper factors, but not do a remand. If the government had made it clear that it was proceeding under G in the first instance, we could have, for example, preserved the Illes argument. That argument has been rejected by this court as far as Miller applying to G proceedings only on plain error review. So, of course, now it's foreclosed. But if we were notified at the beginning of the case that we could make that argument, we could have made that argument. We also could have made the argument only on plain error. And because of how things happen in the district court, we weren't able to make those arguments in a way that this court could actually review them. For the second issue on appeal... So your point is because G wasn't sufficiently invoked, you all did not have the chance to assert the constitutional argument? Is that the idea? Correct. Correct. In a way that this court could actually review them because the court has rejected it on plain error, so we can't overcome... So your point is not that government couldn't do it on remand. It's that they need to do it on remand so that you have then the fulsome opportunities that you're seeking. I suppose, yes. Perhaps if they invoked it, then we would have an opportunity. I don't think the mandate rule would bar that because we didn't have a chance to do that the first time around. For the second issue, Mr. Belmontes is challenging two alcohol-related conditions of supervised release. The alcohol abuse treatment condition and the condition barring him from using or possessing alcohol. He's not challenging any of the other conditions in the judgment, including substance abuse treatment, the directive to follow the rules of a treatment program, to submit to substance abuse testing, and to not use controlled substances. Conditions of supervised release are important because they restrict a person's liberty. And by statute, courts can't impose conditions that are a greater deprivation of liberty than is reasonably necessary. The alcohol conditions in this case aren't necessary for two reasons. First, the record shows that Mr. Belmontes has a drug problem, not an alcohol problem. And second, there are separate unchallenged conditions that adequately address the drug problem. To the first point, Mr. Belmontes was forthcoming at the revocation hearing about his drug problem. He also told his probation officer that he would test positive and did test positive for cocaine and marijuana. Does he have a DWI? What was a DWI conviction for? The record often doesn't specify the substance, but when it does specify substance, it's typically marijuana or cocaine. There is one conviction in the PSR that talks about alcohol, but it was a 15-year conviction before the judgment was entered. There's also a five-year-old arrest where the police officer allegedly smelled alcohol in his breath, but again, that was five years before the judgment was entered. And also, in this case, the original judgment entered in November 2014 that was much closer in time to those mentions of alcohol in the PSR didn't include alcohol-related conditions, and there's nothing in the record about alcohol since then that would support the imposition of these conditions. Under this court's cases in Prieto and Salazar, it's clear error that a court imposes a condition improperly when the only justification for that conviction is dated. And also, these court's cases in Gordon and Bree illustrate that it is error to impose a condition where it's superfluous. In Gordon, for example, the district court imposed anger management condition and a mental health condition, and this court struck the mental health condition because the anger management condition would address what was actually supported by the record, which was that the defendant had a problem with anger and violence. And similar situation in Bree, where there was a substance abuse treatment condition and a mental health condition, and the district court imposed both, and this court said that the substance abuse treatment was the better way to address the problems in the record, which were a substance abuse problem. As far as the third prong of plain error, which applies to the alcohol treatment condition, three points on that. First, this does require inpatient treatment if the probation officer directs that, which is a substantial burden and might interfere with employment opportunities and things like that. Also, alcohol, unlike controlled substances, is otherwise legal for adults to consume, so that imposes an additional burden. And also, finally, Mr. Belmontes would have to pay for it if he's able to, and this court has recognized that on the third prong in cases like Gordon and Alvarez. And again, also in the Gordon case, the court recognized that it's burdensome to require someone to participate in multiple sets of treatment. And finally, on the fourth prong, this court has exercised its discretion in lots of cases to have judgments amended to eliminate unnecessary conditions. For example, Gordon, Jordan, Alvarez, Mahanera, and Flores-Guzman. And again, with the Rosales-Morales point about the cost of resentencing being low and that being a factor for the court to weigh, here the cost would be even lower because all we're asking for is an amended judgment without these conditions. If the court has no further questions, I'm going to end my time for rebuttal. All right. Thank you. You have five minutes for rebuttal. Mr. Sand? May it please the Court. Andrew Sand for the United States of America. Just a couple points of clarification. So my first point is that for the G provision for the mandatory revocation, the parties or the court, neither the parties nor the court need to explicitly invoke that they are under the G provision. The plain language of the statute is clear. It states, if the defendant possesses shall revoke the term of supervised release and require the defendant to serve a term of imprisonment. And this is further bolstered by the understanding that district courts are presumed to know the law. My second point of clarification is that your friend on the other side says that it's not just that you didn't explicitly invoke G, it's that the entire conversation was presuming that it was discretionary rather than mandatory. How do you respond to that record? The defense attorney stated that they would ask to be continued on supervised release, and then the district court said, I'll consider it. But our view is that the district court was just being civil to the defense attorney. Is there any indication in the record that either the government or the court regarded this as automatic rather than... Yes, Your Honor. So I my colleague referred to at ROA 181, at Section 1E, it explicitly referred to 18 U.S.C. 3583G. The sentencing worksheet was filed on December 17, 2018, and thus available to the parties four days prior to the revocation hearing. So the court, the parties, everyone should have been on the same page that this is a mandatory revocation under 3583G. What about her argument that if the defendant had known it was mandatory, he would have objected raising the constitutional argument based on the new Supreme Court case that casts some doubt on whether a jury is required for mandatory revocations? I think it's hard to argue from a negative. The defendant didn't object, and whatever explanation is provided, I can't speak to the defendant's mindset, but the fact is the defendant failed to object. And again, there is no part of the statute that requires any invocation for them to be mandatory revoked under the G provision. It's just an automatic statutory mechanism. On the Hayward issue, has any court applied that jury requirement beyond the specific statute the Supreme Court considered last summer? I'm not sure, Your Honor, but at least in this court, there has no been application of it. Furthermore, if you look at the Hayman decision itself, the plurality opinion in footnote 7, it explicitly stated that it expressed no view on 3583G. And Justice Breyer also, in the concurrence, he stated that he would not transplant the appending line to a supervised release context. When did the sentencing hearing take place? It took place on the 21st of – December 21st, 2018. So before – so that's before Hayman. Yes, Your Honor. It was – it was before Hayman. First, the district court did not base its sentence on impermissible factors. As we've already discussed, Mr. Belmonte's was mandatory revoked under 18 U.S.C. 3583G. This is – this is apparent from the plain language of the statute and the understanding that district courts are presumed to know the law. And because Mr. Belmonte's was mandatory revoked under 3583G, any argument that the district court relied on impermissible factors is foreclosed by this Court's binding precedent in Ilias. Ilias – in Ilias, this Court held that 3583G does not require or limit the 3553A factors that the district court can consider at revocation. And here, because Mr. Belmonte's was mandatory revoked under 3583G, there's no limit on the factors that the district court could have considered. In the alternative, even if Mr. Belmonte's was discretionarily revoked under 3583E, the district court did not dominantly rely on any impermissible factors. As an initial matter, Mr. Belmonte's' argument that the district court essentially hammered by dominantly relying on the seriousness of the offense and the need for just punishment is odd, considering he received a below-guidelines-range sentence. The government invites this Court to review the sentencing transcript in its entirety. It was – it's only about 20 pages long, and it will provide context to the district court's comments that my friend referred to. It will show that the district court did expressly mention or base its sentence on impermissible factors, and instead, it tried to understand Mr. Belmonte's' situation, the circumstances of the underlying supervised release violation, and tried to fashion the most appropriate sentence. In the first part of the sentencing discussion, the district court mostly had a conversation with Mr. Belmonte's himself. They talked about his failed drug tests. They talked about Julio, his half-brother who was found in the car with him. And they talked about why he was staying at a hotel when he had a house in Houston. It's during this exchange that Mr. Belmonte's at RA 105 and 106, he raised the issue of his pending charges in Harris County. He said, to quote, he was in Houston for the charge. I know I got this charge pending. I'm trying to get that charge out of my record. I know it's hard. To which the district court responded, it looks pretty bad. They're tough in Houston. And the court went on to make the other comments about it's a lot of drugs, it's a big These actually implicate the permissible factors of Mr. Belmonte's history and characteristics and the nature and circumstances of the underlying supervised release revocation. Indeed, this Court has stated that it is permissible for the Court to consider the nature of the criminal conduct underlying supervised release violations in order to measure the extent that the defendant breached the Court's trust. That's in Guemreni-Reyes, one of the cases that we cite in our brief. After that exchange, the district court moved on and had a discussion with mostly the probation officer and the defense attorney about fashioning the most appropriate sentence. It's at this part of the sentencing discussion that the probation officer discussed his contact with Mr. Belmonte's and recommended both alcohol and drug treatment. The district court recognized that Mr. Belmonte's had a significant drug issue and at one point was even trying to figure out a way to get him state credit. Again, these implicate permissible factors of Mr. Belmonte's history and characteristics and the need for treatment. Thus, the record shows that the district court did not dominantly focus on the seriousness of the offense or the need for just punishment. In sum, Mr. Belmonte's sentence was not based on impermissible factors. He was mandatory revoked under 3583G, and even if he was not, the district court did not dominantly rely on any impermissible factors. Moving on to the second issue, Mr. Belmonte's alcohol conditions reasonably related to the relevant sentencing factors. To begin – Yes, Your Honor. So I would point you to the PSR. So in PSR paragraph 47, Mr. Belmonte self-reported that he began using alcohol along with marijuana and cocaine as a teenager. And then, as my colleague pointed out, from 2002 until 2013, most of his adult life when he was not in custody, he was arrested eight times for DWI or public intoxication arrest. Two of those arrests, one from 2004 for DWI and one from 2013, public intoxication, explicitly mentioned both drugs and alcohol. Those are at PSR paragraphs 24 and 36. Three of those arrests involve unknown intoxicants, which must be drugs, alcohol, or both. And based on this, the probation officer assessed at PSR paragraph 47 that he was both a drug and alcohol abuser. Mr. Belmonte argues that his 2013 public intoxication arrest was too temporally remote, but he fails to mention that he was in custody from 2014 until 2018, so he couldn't be arrested, for the revocation of his probation associated with his 2014 felony DWI offense. And his probation was revoked in part because he failed to comply with the state court's drug and alcohol treatment conditions. That's at PSR 27. Finally, this court has routinely upheld alcohol conditions for drug abusers. In McCall, this court upheld an alcohol prohibition for a defendant with a criminal history of drug abuse, despite no evidence of alcohol, because alcohol also presents a danger of addiction. In Heredia-Holguin, the post en banc opinion, this court upheld an alcohol prohibition also, because for a defendant with a criminal history of drug abuse, even though the PSR explicitly stated that the defendant had no history of alcohol use. Thus, based on the record and the law, Mr. Belmonte's alcohol conditions reasonably relate to the relevant sentencing factors. Pending any further questions, the government respectfully requests that this court affirm the district court's judgment, except for a limited remand to correct clerical errors. All right, we have your argument. Thank you. Thank you, Your Honor. Mr. Shepard, you get the last word. Thank you, Your Honor. Just a couple of points. First, the cases that the government cites as far as the alcohol conditions in Heredia-Holguin and McCall and those other cases, all of those cases involved a condition banning the use of alcohol, but not also a condition involving the possession of alcohol. So the condition in this case is actually broader than the condition in those cases. Second, the government pointed to evidence in the PSR, which was produced in October 2014, but didn't point to any evidence since the original judgment in this case pointing to alcohol issues. So there is no evidence since 2013 that he has an alcohol problem. But he was locked up most of the time. Correct. But he did get out in July of 2018, and the revocation proceedings happened in December 2018, and his arrest that led to the new law violations involved marijuana. And not alcohol. And he also was forthcoming to both his probation officer and the court about his... How close in time do you think alcohol offenses need to be? I would say within a few years. Even if they've been incarcerated. Well, there's also in this case, though, the fact that he's admitting to a drug problem, and it doesn't make a whole lot of sense that he would hide an alcohol problem, but admit to doing illegal drugs. So putting all of that together in this record, it doesn't... The conditions for alcohol are unnecessary when he's going to be doing substance abuse treatment and has those conditions as well. And a final point, the government mentioned the below-guideline sentence. This court's en banc decision in Escalante Reyes involved a slightly below-guideline sentence, but the court still found all four prongs of plain error met. The court said that the reliance on the improper factor may have tempered the court's mercy in imposing an even lower sentence. And so for that reason, we would ask that the court find all the prongs of plain error met and either remand for resentencing or remand for an amended judgment. All right, thank you. Thank you. Case will be submitted.